1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| NEAL THOMAS KEYES, | Case No. 1:21-cv-01779-EPG |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 1, 16). |
| Defendant. | |

12
13
14
15
16
17
18

This matter is before the Court on Plaintiff's complaint for judicial review of an

19 unfavorable decision by the Commissioner of the Social Security Administration regarding his

20 application for disability and supplemental security income benefits. The parties have consented

21 to entry of final judgment by the United States Magistrate Judge under the provisions of 28

22 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

23      Plaintiff presents the following issues:

24     1.  Whether the ALJ failed to fully and fairly develop the record and obtain an
           opinion from a treating or examining medical source.
25
26     2.  Whether the ALJ's analysis under SSR 19-2p is inadequate and unsupported.
27     3.  Whether the ALJ failed to include work-related limitations in the RFC
           consistent with the nature and intensity of Plaintiff's limitations, and failed to
28         offer legitimate reasons for rejecting Plaintiff's subjective complaints.

1   (ECF No. 16, p. 3) (capitalization omitted).

2         Having reviewed the record, administrative transcript, the briefs of the parties, and the

3   applicable law, the Court finds as follows:

4   **I.**      **ANALYSIS**

5         **A.**      **RFC and Failure to Develop the Record**

6         Plaintiff first challenges the following RFC assessed by the ALJ:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to lift, carry, push, pull up to 10 pounds occasionally and lesser weights frequently; sit for a total of 6 hours a day; and stand and / or walk for a total of 2 hours a day. 20 CFR 404.1567(a); 20 CFR 416.967(a) ("Sedentary work"). He needs a cane to ambulate, but can carry weight in the opposing hand. He can never climb ladders, ropes, or scaffolds, but occasionally climb ramps and stairs. He can occasionally balance and stoop, but never crouch, kneel, or crawl. He needs to avoid concentrated exposure to extreme heat. He needs to avoid concentrated exposure to fumes, odors, dusts, gases, and pulmonary irritants. He needs to avoid all exposure to hazards such as dangerous machinery and unprotected heights.

14   (A.R. 26-27).

15         Plaintiff argues that "the ALJ pointed to no evidence from a treating or an examining

16   medical professional to support this assessment" and "this gap renders the ALJ's RFC

17   unsupported inasmuch as the RFC is based upon the opinion of non-examining physicians who

18   reviewed only brief portion of Plaintiff's medical records." (ECF No. 16, p. 11). Plaintiff also

19   argues that the ALJ reviewed some records that no medical professional had considered, making

20   it "evident that he made a physical RFC determination based on his own interpretation of the raw

21   medical evidence." (*Id.* at 12). Plaintiff contends that, in assessing the RFC, the ALJ was

22   required to further develop the record by obtaining "a medical evaluation of Plaintiff's work

23   restrictions." (*Id.*).

24         A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20

25   C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2,

26   § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the

27   capacity for sustained performance of the physical-mental requirements of jobs"). "In

28   determining a claimant's RFC, an ALJ must consider all relevant evidence in the record,

2

1  including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain,

2  that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec.*

3  *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted); *see*

4  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was

5  "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports). And

6  "because it is the ALJ's responsibility to formulate an RFC that is based on the record as a whole,

7  . . . the RFC need not exactly match the opinion or findings of any particular medical source."

8  *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal.

9  Aug. 22, 2014). In reviewing findings of fact with respect to RFC assessments, this Court

10  determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g).

11  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389,

12  402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10

13  (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to

14  support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted). Lastly, an ALJ has

15  a duty to develop the record "only when there is ambiguous evidence or when the record is

16  inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453,

17  459-60 (9th Cir. 2001).

18      Although Plaintiff complains that the ALJ did not have a treating or examining medical

19  source review all the evidence and render an opinion on Plaintiff's functional limitations, the ALJ

20  was not required to do so. *Hogan v. Kijakazi*, No. 1:20-CV-01787-SKO, 2022 WL 317031, at *10

21  (E.D. Cal. Feb. 2, 2022) (noting no "rule of general applicability that an ALJ must obtain an

22  examining opinion in every case before rendering an RFC determination"). Moreover, in

23  formulating the RFC, the ALJ, as required, considered the record as a whole, including Plaintiff's

24  medical records, subjective complaints, and most pertinent here, the findings of medical

25  professionals who reviewed portions of the record:

26      In February 2019, the State agency's initial medical consultant found that the
        claimant was able to perform sedentary work with mostly "occasional" postural
27      demands, but no climbing of ladders, ropes, and scaffolds, and some
        environmental restrictions. (Exs. 1A/13-14, 2A/13-15). Those findings accounted

28

1
2
3
4

for the claimant's obesity and the relatively mild clinical findings during the examination earlier in the month. (Ex. 8F/6). However, for the reasons given above, the undersigned finds that the use of a cane, but not a walker or wheelchair, would be necessary, and that an assignment to work with no crouching, kneeling, and crawling, and less exposure to fumes, odors, etc., is more reasonable. In other words, those parts of the consultant's assessment are not consistent with the totality of the evidence, and are not persuasive.

5
6

The same logic applies to the State agency's reconsideration medical consultant's findings, since that medical consultant reviewed minimal "new" evidence. (Exs. 5A/8,11-12, 6A/8,11-12).

7
8

(A.R. 32-33). Moreover, the ALJ considered the opinion of a doctor who evaluated Plaintiff's

physical conditions:

9
10
11
12
13
14
15
16
17

The examiner's opinion regarding lifting and carrying was not specific ("Moderate weights"). The examiner's opinions regarding the performance of "postural activities" and standing/walking were not supported by the examiner's mild lumbar spine range of motion findings or all of the examiner's "knee" findings. Moreover, the examiner's opinion is not consistent with the later MRIs of the claimant's knees, or the fact that the motion in those knees was not full later in the month. (Ex. 10F/42). However, the opinion regarding "maximum sitting capacity" was supported, and it is consistent with the claimant's testimony. Thus, it is "persuasive." 20 CFR 404.1520c(c)(1)-(2); 20 CFR 416.920c(c)(1)-(2). Significantly, the claimant worked for the Census Bureau in 2020. He sat during his 8-hour shifts. (Hearing, 10:46:50). Asked at the hearing about the intensity of his pain, the claimant testified that the pain in his back was only a "0 to 1" when sitting down. (Hearing, 11:13:35).

18

(A.R. 30, 803).

19
20
21
22
23
24
25
26
27
28

While Plaintiff points out that the state medical consultants did not review all the medical evidence and that there is relevant medical evidence post-dating the physical examination, such does not render the RFC unsupported. *Maliha K. v. Saul*, No. 8:19-CV-00877-MAA, 2020 WL 2113671, at *6 (C.D. Cal. May 4, 2020) ("[T]he fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence."). Notably, "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020) (unpublished). "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (unpublished).

Additionally, Plaintiff's contention that the ALJ interpreted "raw medical data" from other records, mainly Plaintiff's MRIs, fails for two reasons. (ECF No. 16, p. 12). First, as a general matter, there "is a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). Second, as Plaintiff appears to acknowledge,[1] there is nothing to show that the ALJ made explicit medical judgments based on the raw data from the MRIs or other records. *See Chao v. Astrue*, No. 2:10-CV-01972 KJN, 2012 WL 868839, at *11 (E.D. Cal. Mar. 13, 2012) (noting that an ALJ cannot go outside record to make his own exploration and assessment of a claimant's medical condition). And the existence of the MRIs is not sufficient, in itself, to trigger a duty for the ALJ to obtain a reviewing medical professional. As one court has noted:

> Plaintiff contends that the ALJ should have obtained an opinion from a treating or examining source but instead relied on her own interpretations of the clinical findings. (Doc. No. 18 at 10.) However, Plaintiff failed to submit any medical opinions from a treating or examining physician as to her ability to work or her functional limitations. The burden is on the claimant to establish disability. [*Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990)]; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). Because it is the Plaintiff's burden to present evidence of disability, the mere absence of an opinion from an examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity.

*Harrison v. Saul*, No. 1:19-CV-01683-BAM, 2021 WL 1173024, at *5 (E.D. Cal. Mar. 29, 2021). Importantly, Plaintiff offers no opinion from a treating or examining physician assessing functional limitations based on his MRIs or other records. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting challenge to RFC determination where the claimant did "not detail what other physical limitations follow from the evidence of his knee

---

[1] Plaintiff's brief states that the ALJ made implicit findings regarding MRI evidence: "Specifically, relative to the back impairments, while the ALJ did not discuss his interpretation of the February, 2020 MRI evidence, . . . he did acknowledge the new diagnosis in the severe impairments section of the decision. AR 22. Because he adopted the RFC issued by the reviewing physicians, it is implied that the ALJ believed that the new findings and new diagnosis would not impose further limitations."). (ECF No. 16, pp. 12-13).

1   and shoulder injuries, besides the limitations already listed in the RFC"). Accordingly, the Court

2   does not find the RFC to be unsupported based on the ALJ not further developing the record by

3   obtaining a treating or examining opinion.

4   **B.    SSR 19-2p**

5        Plaintiff next argues that "[t]he ALJ's analysis under SSR 19-2p is inadequate and

6   unsupported." (ECF No. 16, p. 13). Specifically, Plaintiff argues that the ALJ failed to "articulate

7   how he considered" findings relating to his epidural lipomatosis, improperly "assumed that there

8   were no further limitations imposed by [this disorder]," and "mischaracterized the evidence" in

9   determining whether Listing 1.16 was met. (*Id.* at 14, 15)

10       Social Security Rulings, or SSRs, are rulings that "represent precedent final opinions and

11  orders and statements of policy and interpretations" adopted by the Social Security

12  Administration. 20 C.F.R. 402.35(b)(1).

13       "SSRs reflect the official interpretation of the [SSA] and are entitled to 'some
         deference' as long as they are consistent with the Social Security Act and
14       regulations." *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir.2006) (quoting
         *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n. 2 (9th Cir.2005)). SSRs do not carry
15       the "force of law," but they are binding on ALJs nonetheless. *See Quang Van Han
         v. Bowen*, 882 F.2d 1453, 1457 & n. 6 (9th Cir.1989).
16

17  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

18       The SSR at issue here, SSR 19-2p, provides guidance on how obesity is evaluated in

19  determining whether someone is disabled. Soc. Sec. Ruling, SSSR 19-2p; Titles II & XVI:

20  Evaluating Cases Involving Obesity, SSR 19-2P (S.S.A. May 20, 2019), 2019 WL 2374244.

21  Pertinent here, SSR 19-2p advises as follows:

22       Obesity is not a listed impairment; however, the functional limitations caused by
         the MDI of obesity, alone or in combination with another impairment(s), may
23       medically equal a listing. For example, obesity may increase the severity of a
         coexisting or related impairment(s) to the extent that the combination of
24       impairments medically equals a listing.

25       We will not make general assumptions about the severity or functional effects of
         obesity combined with another impairment(s). Obesity in combination with
26       another impairment(s) may or may not increase the severity or functional
         limitations of the other impairment. We evaluate each case based on the
27       information in the case record.

28

1  *Id.*

2        Because Plaintiff's argument is directed at whether the ALJ properly evaluated his obesity

3  for purposes of the listings, the Court provides a brief overview of Step Three of the disability

4  process. At Step Three, the ALJ considers whether a claimant has an impairment that "meets or

5  equals a listed impairment in appendix 1," and if the claimant has such an impairment, he or she

6  is found "disabled without considering [his or her] age, education, and work experience." 20

7  C.F.R. §§ 404.1520(d); 416.920(d). The listing of impairments "describes for each of the major

8  body systems impairments that [are] consider[ed] to be severe enough to prevent an individual

9  from doing any gainful activity." 20 C.F.R. §§ 404.1525; 416.925. "An ALJ must evaluate the

10  relevant evidence before concluding that a claimant's impairments do not meet or equal a listed

11  impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Further, the ALJ's decision must

12  be supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999)

13  (internal citation and quotation marks omitted). "A boilerplate finding is insufficient to support a

14  conclusion that a claimant's impairment [do not meet or equal a listed impairment]." *Lewis*, 236

15  F.3d at 512. However, "[i]f the evidence can support either outcome, the [C]ourt may not

16  substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (internal citation omitted).

17  And the burden of proof is on the claimant at Step Three. *Id.*

18        With these standards in mind, the Court considers the ALJ's Step Three finding:

19
20  In 1999, the agency deleted an "Obesity" listing, because its criteria did not
represent a degree of functional limitation that would prevent an individual from
engaging in any gainful activity. Even now obesity is not "a listed impairment."

21  SSR 19-2p. The functional limitations caused by obesity may medically equal a
listing, however, alone or in combination with other impairments. SSR 19-2p. In

22  this case, they do not. . . .

23       . . . .

24  Next the undersigned addresses the claimant's musculoskeletal disorders. There is
no evidence that the pathology in the claimant's lumbar spine results in

25  "compromise of the cauda equina." Listing 1.16C. Nevertheless, the signs required
by Listing 1.15B and Listing 1.16B were not seen from the alleged onset date

26  through the application date. The claimant did not present with abnormal
neurological findings on February 14, 2019. (Ex. 8F). The strength limitations

27  noted on September 11, 2020, were not accompanied by "sensory changes,"

28  "areflexia," "decreased deep tendon reflexes," or a positive straight leg raise (Ex.

14F/178) [] and were not repeated on October 1, 2020 (Ex. 17F/5). Thus, although the claimant may have a documented need for one cane, the evidence does not prove a documented need for a two canes, two crutches, a walker, or the "power scooter" recommended last fall. Listing 1.15D; Listing 1.16D; Listing 1.18D. Moreover, for the reasons discussed below, most notably, the normal examination in early 2019, the evidence does not establish that the claimant is unable to use either upper extremity.

(A.R. 26).

While Plaintiff argues that the ALJ failed to "articulate" how he considered Plaintiff's epidural lipomatosis in connection with the Step Three finding, nothing in SSR 19-2p required the ALJ to do so. As one Court has noted in an analogous context, social security "regulations distinguish between evidence the ALJ is required to 'consider' and evidence that requires him to 'articulate' how he considered that evidence." *Schilling v. Comm'r of Soc. Sec.*, No. 1:21-CV-01268-SAB, 2022 WL 17418343, at *14 (E.D. Cal. Dec. 5, 2022). Here, in connection with Step Three, SSR 19-2p notes that the ALJ "will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)" and will "evaluate each case based on the information in the case record." 2019 WL 2374244. More generally, SSR 19-2p repeatedly refers to "considering" a person's obesity in connection with the other steps of the sequential process. *Id.* ("When we evaluate the severity of obesity, we consider all evidence from all sources. We consider all symptoms, such as fatigue or pain that could limit functioning. We consider any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical or mental impairments."). Unlike other social security authority, nothing in SSR 19-2p requires an ALJ to articulate specific findings regarding any impairment. *Compare* Titles II & XVI: Work Skills & Their Transferability As Intended by the Expanded Vocational Factors Reguls. Effective Feb. 26, 1979, SSR 82-41 (S.S.A. 1982) ("When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision."); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (remanding because the ALJ failed to "make specific findings on whether [the claimant] has transferable skills" as required by SSR 82-41).

With this distinction in mind, there is nothing to indicate that the ALJ improperly made

1    "general assumptions about the severity or functional effects of obesity combined with another

2    impairment(s)" or improperly "evaluate[d] [Plaintiff's] case based on the information in the case

3    record." And it is evident from the record that the ALJ at least considered Plaintiff's epidural

4    lipomatosis. Notably, it is one of the severe impairments that the ALJ found Plaintiff to suffer

5    from. (A.R. 22). Further, in connection with Step Three, the ALJ noted that Plaintiff's obesity,

6    alone or in combination with "other impairments" may medically equal a listing, but in this case

7    "they do not." (A.R. 25).

8          While Plaintiff criticizes the ALJ's findings in connection with the listings, he ultimately

9    fails to demonstrate error warranting remand. Plaintiff points out that, in connection with Listing

10   1.16, which concerns "[l]umbar spinal stenosis resulting in compromise of the cauda equina," the

11   ALJ was incorrect to the extent that the ALJ indicated that there were not any sensory changes

12   noted in Plaintiff's September 11, 2020 exam because there was a notation in this record that

13   Plaintiff "[l]acks sensation on bilat feet – reason for unsteady gait." Listing 1.16, contained in 20

14   C.F.R. § Pt. 404, Subpt. P, App. 1; (ECF No. 16, p. 15, citing AR 1054). However, as Defendant

15   argues, it is not enough for Plaintiff to identify some piece of evidence the ALJ missed; rather, it

16   is Plaintiff's burden to show that he meets or equals this listing. (ECF No. 23, p. 13). Importantly,

17   "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare

18   them to any listing in an equivalency determination, unless the claimant presents evidence in an

19   effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

20   Accordingly, because Plaintiff has "not pointed to any evidence of functional limitations due to

21   obesity" showing that Plaintiff would meet or equal the requirements of Listing 1.16, "the ALJ

22   did not commit reversible error." *Id.*; *see Rodriguez v. Comm'r of Soc. Sec. Admin.*, No. SACV

23   17-1456 JC, 2018 WL 6831535, at *6 (C.D. Cal. Dec. 27, 2018) (collecting cases noting that

24   there is no harmful error in connection with the listings where the plaintiff fails to present

25   evidence and argument that plaintiff met or equaled a listing).

26          C.      **Plaintiff's Subjective Complaints**

27          Lastly, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to

28   reject his subjective complaints and failed to include limitations from those complaints in the

9

RFC. (ECF No. 14, p. 14). Specifically, Plaintiff argues that the ALJ erred in discounting his "allegation that he required a motorized scooter." (*Id.* at 16).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the type of symptoms described at the hearing." (A.R. 28). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's complaints and daily activities as follows:

> At the time of the hearing, the claimant was living with his partner and partner's aunt. He was 5'9" tall, 431 pounds. He claimed to use a nonprescribed cane "to walk, when I'm able to walk." He began to use it in 2017. He was prescribed a wheelchair, but did not own one. Specifically, the claimant testified, "I've been using the [manual] wheelchair for about a year and a half now"; "it was prescribed for me, but Medi-Cal denied it, so, I just, whenever one is available to borrow, because I'm not able to purchase one." He used a motorized cart when in the store.
>
>         . . . .
>
> . . . He was not able to lift more than 5 pounds. He was able to walk "about,

10

maybe 50 to 75 feet," and to stand for "about a minute at a time." He was able to sit "about two hours." He was able to use his hands when they were not numb. They were numb "once or twice an hour," for "maybe five minutes." The claimant did not clean, and was a recipient (via his partner) of in-home support services, including assistance in the shower and while dressing. He was able to drive, but not shop unless there was a motorized cart available.

When questioned by counsel, the claimant claimed to be able to stand more than one minute even with a cane. . . .

    . . . .

The undersigned now addresses the claimant's reports of severe back pain and severe numbness in his legs. An assignment to work with no kneeling, crouching, and crawling accounts not only for morbid obesity, but also the pathology in his lumbar spine (Exs. 1F, 2F/26, 13F/1, 15F/2) and knees (Exs. 24F/122,124, 13F/3-6, 15F/4-7). SSR 19-2p. Moreover, as discussed below, there are enough references to a cane in the records to include one in the above RFC finding. The evidence regarding the use of a wheelchair, however, is inconsistent and largely subjective. Before discussing the more recent evidence, the undersigned notes that the claimant was morbidly obese, and was already complaining of leg numbness in October 2016. (Ex. 24F/4-5). However, the claimant was "standing outside waiting" for ambulance then." (Ex. 17D/31). The claimant's gait was antalgic before his January 2017 neck surgery. (Ex. 2F/14). However, he was no longer using a cane on January 31, 2017, after the surgery. (Ex. 2F/15).

The claimant was "ambulat[ing] with the assistance of a cane" on March 29, 2017. (Ex. 24F/87). However, his leg strength and sensation were unremarkable. (Ex. 24F/89). Thus, the claimant's neurological presentation did not support the use of a cane. Despite the pathology in his lumbar spine, the reason the claimant asked to be placed on "short term" disability in November 2017, was increased "palpitations," not back pain or leg weakness. (Ex. 4F/42-47). Despite a worse "A1C" (10%) and mildly low iron markers (Ex. 4F/55-56), the claimant felt well and was losing weight in March 2018. (Ex. 4F/16). Of note, the "resignation" finalized at that time was not necessarily because the claimant was unable to work. It was a condition imposed on him as part of the settlement of two pending workers' compensation claims, one for a specific injury in July 2017. (Exs. 17D/5-6,12, 4F/15; Hearing, 10:52:40).

The claimant was given a hinged knee brace on March 28, 2018. (Ex. 4F/12). However, the claimant's knees were painful with rising, and not when walking ("ok"). (Ex. 4F/11). On June 30, 2018, the claimant was able, while upset, to "ambulate[] from emergency department under his own power without difficulty and without appreciable distress." (Ex. 4F/8). Although the claimant later implied that the pain in his back and weakness in his legs were the reason why he stopped working for Pridestaff in November 2018 (Exs. 3E/7, 6E/5; Hearing, 10:50:00), he had not complained of musculoskeletal or neurological symptoms before (Ex. 5F/7,11). He also did not report musculoskeletal or neurological symptoms on November 26, 2018. (Ex. 5F/15). In fact, a "recent URI" was the reason why the

11

claimant asked to have disability "paper work" completed in December 2018. (Ex. 5F/19). Despite lower back tenderness and "[d]ecreased ROM," but not a loss of sensation or loss of reflexes, the claimant did not report muscle weakness or back pain. (Ex. 5F/22-23). He had not been taking pain medication beforehand. (Ex. 1E/5).

Given the totality of the evidence, there was little support for the claimant's partner's assertion that the claimant was using a "walker" or "cane" in the end of December 2018, notwithstanding the claimant's request for knee injections the following month. (Exs. 7E, 10F/9,12). In fact, a "gait problem" was not reported on January 23, 2019. (Ex. 19F/42). Although the claimant walked slowly with a limp on February 2, 2019, the claimant's posture was normal. The examiner did not note the use of an assistive device. (Ex. 7F/4). Twelve days later, the claimant was able to bend forward 70 degrees at the waist. (Ex. 8F/5). Despite crepitus and tenderness, and despite the use of a cane, the claimant's knees were fully mobile. The claimant's hips and ankles were also fully mobile, and his motor strength was 5/5 throughout. His sensation was grossly intact and his reflexes were 2+ and normal. (Ex. 8F/5).

. . . .

. . . It was only on September 11, 2020, that Dr. Hernandez may have corroborated the claimant's complaints of weakness and unsteadiness. (Ex. 14F/175,178). He recommended the use of an electric scooter, citing the claimant's alleged inability to ambulate 10 feet within resting, low back tenderness, and a severe loss of strength (2/5) in the claimant's lower and upper extremities. However, those findings were not consistent with any of the prior records. Moreover, Dr. Hernandez's recommendation was not immediately approved. (Ex. 14F/192). Rather, the insurance company asked for the approval of a physical therapist. Thus, the claimant was referred to a physical therapist. On October 1, 2020, the therapist wrote that the claimant's active range of motion and strength were "WFL" (within functional limits) in each arm and leg. (Ex. 17F/5). The therapist wrote that the claimant's core stability was "good" and that the claimant was able to transfer independently. The claimant was able to lift groceries from the floor. (Ex. 17F10).

Based on the evidence of record, the decision to recommend a "power scooter" (Ex. 17F/5) was not clinically supported.

(A.R. 27-29).

First, the ALJ reasonably relied on medical evidence indicating that Plaintiff did not require a motorized scooter to discount his allegations. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Citing the conflict between Morgan's testimony of subjective complaints and the objective medical evidence in the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial reasons that undermined

1  Morgan's credibility."). For example, Plaintiff's ability to ambulate "under his own power

2  without difficulty and appreciable distress" (A.R. 665), failure to report musculoskeletal issues on

3  medical visits (A.R. 746, 750, 754, 761, 762), and normal examination findings in his lower

4  extremities (A.R. 799-803) were reasonable bases to discount Plaintiff's claim that he could only

5  stand for about one minute, even with a cane.

6      Moreover, the lack of corroborating evidence to show that Plaintiff required a motorized

7  scooter was another basis to discount his allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857

8  (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is

9  not fully corroborated by objective medical evidence, the medical evidence is still a relevant

10  factor in determining the severity of the claimant's pain and its disabling effects."). And reports

11  that Plaintiff had stopped working prior jobs due to a settlement agreement and "URI" rather than

12  having problems moving without a motorized scooter, were further bases to discount his alleged

13  inability to ambulate under his own power. (A.R. 64, 758).

14      Lastly, it is worth reiterating, as discussed above, that the ALJ also relied on state agency

15  consultants and the medical record as a whole in formulating the RFC. (A.R. 32-33). Notably,

16  although the ALJ did not find the use of a motorized scooter to be supported, the ALJ included

17  the use of a cane in the RFC and significant limitations, including that Plaintiff could never climb

18  ladders, ropes, or scaffolds; could never crouch, kneel, or crawl; and could stand and/or walk for

19  a total of two hours a day. (A.R. 26). While Plaintiff points to a different interpretation of the

20  record, arguing that it supports his requiring a motorized scooter, this, at most, presents another

21  "rational interpretation" of the record, which means that "it is the ALJ's conclusion that must be

22  upheld." *Burch*, 400 F.3d at 679.

23      Accordingly, the Court concludes that the RFC is supported by substantial evidence and

24  that the ALJ provided legally sufficient reasons for not giving full weight to Plaintiff's subjective

25  complaints.

26  \\\

27  \\\

28  \\\

## II.     CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **February 22, 2023**                    /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE

14